**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00269-RSE**

**WILLIAM J. L.** **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security* **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

The Commissioner of Social Security denied Claimant William J. L.'s ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Fact and Law Summary and Brief. (DN 12). The Commissioner filed a responsive Fact and Law Summary (DN 17). And Plaintiff filed a Reply Brief. (DN 18).

The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 6; DN 7).

I. Background

William J. L. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act ("SSA") on May 16, 2023, alleging disability beginning October 1, 2017. (Transcript, hereinafter, "Tr." 136-37). Claimant last met the insured requirements of the SSA on December 31, 2017, meaning the relevant period of disability for his application only spanned three months. (Tr. 19). He alleged disability based on the following medical conditions: his

inability to speak coherently; excessive drooling; unstable balance and falling; illegible writing; and an inability to concentrate or focus. (Tr. 187). Claimant's application was denied at the initial review level on July 7, 2023 (Tr. 50-54) and again at the reconsideration review level on November 26, 2023 (Tr. 55-59).

At Claimant's request (Tr. 85-87), Administrative Law Judge Greg Maddox ("ALJ Maddox") conducted a remote administrative hearing on May 3, 2024. (Tr. 27-49). Claimant appeared by phone with his attorney. (*Id.*). An impartial vocational expert also participated. (*Id.*). At times during the hearing, Claimant's wife provided testimony for clarity. (*See* Tr. 34).

In relevant part, Claimant testified he has a master's degree in engineering and until 2012, he worked as a purchasing manager for a metal recycling business. (Tr. 31-21). He began having medical issues in 2016/2017. (Tr. 33). He estimates being able to walk for 18-20 minutes before needing a break, usually with his wife's help. (Tr. 34). Claimant's wife elaborated that he holds on to her as he walks because if he doesn't, he will trip. (Tr. 35-36). Describing his gait, Claimant's wife states that "he shuffles his feet, he doesn't pick them up" and he moves at a slow pace. (Tr. 37). Claimant can stand if he holds onto something but resists using a cane or a walker. (Tr. 38). Claimant can sit for about 20 minutes before he needs to change positions due to his lower back pain. (Tr. 39). After sitting for 20 minutes, he estimates his back pain is an eight out of ten. (*Id.*).

When asked when his walking became as bad as it is today, Claimant responded "about four or five years ago." (Tr. 40). His speech has also gotten progressively worse over the last four years. (Tr. 40-41). His wife explains she can understand his speech because she lives with him but that other people cannot understand him at all. (Tr. 41). He has difficulty controlling the volume of his speech and difficulty getting out what he wants to say. (*Id.*). Claimant's mouth muscles are weakened from Parkinson's disease, which causes him to drool. (Tr. 41-42).

Claimant's wife helps him get dressed, but he can clean himself independently using a shower seat. (Tr. 42). He has a hard time using silverware and "eats like a caveman." (Tr. 43). Rigidity in his hands results in his inability to carry items, open bottles, button buttons, or write. (Tr. 43-44). About a year ago, Claimant started having instances where he "freezes up" for about two minutes. (Tr. 44-45). These instances happen once or twice a day. (*Id.*). During these episodes, he stares into space and cannot swallow. (*Id.*). Despite these challenges, Claimant still drives to tai chi classes and the store, but not very often. (Tr. 45-46).

After considering Claimant's testimony and the medical records submitted, ALJ Maddox issued an unfavorable decision on May 28, 2024. (Tr. 17-22). He applied the five-step sequential analysis for evaluating adult disability claims from 20 C.F.R. § 404.1520 and found as follows. First, Claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 1, 2017, through his date last insured of December 31, 2017. (Tr. 19). At Step Two, ALJ Maddox found that through the date last insured, Claimant had medically determinable impairments of "atypical Parkinsonism, mild obesity[,] and a lumbar spine disorder residual to surgical repair." (Tr. 19). But ALJ Maddox determined that through the date last insured, Claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; and, therefore, Claimant did not have a severe impairment or combination of impairments. (Tr. 19-20).

Because ALJ Maddox determined Claimant was not disabled at Step Two, there was no requirement for the ALJ to proceed through the remaining steps of the sequential evaluation process. 20 C.F.R. § 404.1520 § 404.1520(a)(4); *see also McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (if claimant is found to be disabled or not disabled at a step, the inquiry is ended at that step). ALJ Maddox concluded Claimant was not under a disability, as

defined in the SSA, from October 1, 2017, his amended alleged onset date, through December 31, 2017, his date last insured. (Tr. 22).

Claimant administratively appealed ALJ Maddox's denial. (Tr. 132-33), but the Appeals Council declined review (Tr. 1-3). At that point, ALJ Maddox's denial became the final decision of the Commissioner, and Claimant appealed to this Court pursuant to § 405(g). (DN 1).

II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as

adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Analysis

Claimant challenges ALJ Maddox's determination that he did not have a severe impairment or combination of impairments during the relevant disability period. (DN 12, at PageID # 2010-14). To Claimant, the longitudinal medical record, his testimony and function reports, and his wife's testimony demonstrate that his impairments were in fact "severe" pursuant to 20 C.F.R. § 404.1522. (*Id.*).

Step Two of the sequential evaluation process requires ALJs to determine whether a claimant has a severe impairment or combination of severe impairments that significantly limits one's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). Establishing a severe impairment exists is a "*de minimis* hurdle." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). But the Sixth Circuit has also noted that "[w]hen a doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment." *Id.* at 930. Claimant bears the burden of demonstrating he has a severe impairment. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

As noted above, ALJ Maddox found Claimant had the medically determinable impairments of "atypical Parkinsonism, mild obesity[,] and a lumbar spine disorder residual to surgical repair but that none of those impairments singly or in combination "significantly limited the ability to perform basic work-related activities for 12 consecutive months[.]" (Tr. 19-20). Therefore, ALJ Maddox determined Claimant "did not have a severe impairment or combination of impairments. (Tr. 20). To support this determination, ALJ Maddox extensively recounted Claimant's subjective hearing testimony and stated he "considered all the subjective allegations within the record[.]" (Tr. 20-21). After recounting this information, ALJ Maddox determined Claimant's subjective allegations were not entirely consistent with a preponderance of the record evidence establishing that Claimant could perform a greater range of work-related tasks than he alleged during the relevant period. (Tr. 21). ALJ Maddox then proceeded to review the sparse medical records from the three-month period between October 1, 2017 to December 31, 2017, including examination and imaging studies in November 2017 and an examination in December 2017. (*Id.*).

Ultimately, ALJ Maddox concluded "[t]he available objective evidence does not establish a continuous 12-month period during which his medically determinable impairments caused significant functional limitations related to his ability to work" or that any such limitations "would persist for 12-months despite the prescribed, conservative treatment." (Tr. 21-22). ALJ Maddox further recognized that Claimant's statements regarding his "ongoing, very active lifestyle" despite symptoms bely his and his wife's assertions regarding the severity of his impairments and would "support a finding that even without treatment for his complaints, he did not experience significant functional restrictions that lasted or were expected to last at least 12 months in relation to the period at issue." (Tr. 22).

To support his allegations that ALJ Maddox erred in not finding his impairment(s) to be severe, Claimant largely cites to his own testimony from the administrative hearing and a subjective "Function Report" he submitted with his initial claim. (DN 12, at PageID # 2011). Claimant also references the following objective medical records to support the severity of his impairments:

- A May 15, 2017 visit with neurologist Justin Phillips, MD, where he presented with dystonia, hypophonia, and difficulty swallowing. Dr. Phillips attributed Plaintiff's balance problems to limb dystonia and noted Plaintiff's failed trials of Azilect and ropinirole, antiparkinsonism agents. (Tr. 639).

- Diagnosis of atypical Parkinsonism in September 2017. (Tr. 1967).

- A November 1, 2017 exam with Dr. James Jennings, revealing lumbar tenderness, pain, and spasms. Dr. Jennings prescribed a muscle relaxer. (Tr. 632-33).

- A November 30, 2017 exam with APRN Jennifer Dupree, revealing limited lumbar range of motion secondary to pain and stiffness, as well as cold intolerance, back pain, and sleep disturbance. APRN Dupree prescribed a Medrol Dosepak. (Tr. 630-31).

- A December 26, 2017 evaluation for back pain at a spine center, where orthopedic surgeon John Dimar observed that Plaintiff had classic masked facies, cogwheel rigidity, and walked with a shuffling gait. (Tr. 624-27). An MRI showed lumbar stenosis, facet fluid, and instability associated with L4-5 spondylolisthesis. Dr. Dimar instructed Claimant to limit walking to not aggravate spinal stenosis or risk a potential stress fracture, and to get an epidural steroid injection. (*Id.*).

- A February 20, 2018 note from Dr. Dimar that although Claimant received temporary relief from the injection, his pain soon returned, and attributing this pain to "underlying Parkinson's disease and this is seriously affecting his activity [sic] to do most anything." (Tr. 619).

(DN 12, at PageID # 2012-13). In Claimant's view, all of his primary disabling symptoms affect his ability to perform basic work activities, and ALJ Maddox unreasonably concluded otherwise based on the above stated evidence. (*Id.* at PageID # 2013).

The Commissioner responds that ALJ Maddox carefully considered the limited evidence from the relevant disability period and reasonably concluded that Claimant did not have a severe

impairment(s) that would significantly limit his ability to perform basic work activities. (DN 17, at PageID # 2028). The Commissioner further asserts that Plaintiff has not pointed to any evidence ALJ Maddox did not consider and that even if evidence would support an alternative conclusion, the relevant inquiry is whether the ALJ supported his decision with substantial evidence. (*Id.*).

In his reply brief, Claimant emphasizes the Commissioner's failure to address that an ALJ's step-two severity finding is a "de minimis" hurdle, which Claimant characterizes as "very deferential to claimants." (DN 18, at PageID # 2031-32 (citing *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) ("This court construes step two as a *de minimis* hurdle . . . intended to 'screen out totally groundless claims.'") (add'l citation omitted)))). ALJ Maddox's finding that he suffered from *zero* severe impairments, Claimant argues, was "based on an unreasonable interpretation of the record in light of the *de minimis* step two standard[.]" (*Id.* at PageID # 2032). Claimant's reply also alleges that both ALJ Maddox and the Commissioner's response brief fail to address a "highly relevant statement from Dr. Dimar," which attributed Claimant's back pain to the "fact that he has underlying Parkinson's disease and this is seriously affecting his activity [sic] to do most anything." (*Id.* at PageID # 2034 (citing Tr. 619)).

Claimant's allegation of error fails for several reasons. As an initial matter, Claimant is correct that the Sixth Circuit characterizes establishing a severe impairment as a *de minimis* hurdle. *Despins,* 257 F. App'x at 929. But the fact that this is a *de minimis* hurdle does not mean that every claimant filing for disability benefits will be deemed to have a severe impairment at step two.[1] Such reasoning would render step two automatic and meaningless. And if such reasoning applied, courts would never affirm an ALJ's step two finding of no severe impairment. *See, e.g., Hardwick v. Colvin*, No. 3:13-CV-125, 2014 WL 1092178, at *2 (E.D. Tenn. Mar. 18, 2014) (affirming

[1] Black's Law Dictionary defines *de minimis* as a "very small or trifling matter[.]" *Black's Law Dictionary* 388.

ALJ's determination that plaintiff did not suffer from a severe physical or mental impairment at step two). Rather, the *de minimis* standard requires the claimant to show some evidence in the objective medical record suggesting that an impairment "significantly affected his ability to work." As Claimant identified, "significantly" is construed liberally in favor of the claimant. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425,428 (6th Cir. 2007).

Claimant points to evidence he believes establishes that his impairments significantly affect his ability to work. However, ALJ Maddox considered nearly all of the evidence Claimant identifies and then some. He thoroughly considered Claimant and Claimant's wife's hearing testimony. He then discussed the "very limited" medical evidence between the alleged onset date and the date last insured, highlighting information from records that both supported Claimant's severity allegations and disproved such allegations.

For instance, ALJ Maddox discussed how during the early November examination, Dr. Jennings noted Claimant's pre-existing diagnosis of atypical Parkinsonism, Claimant's reports of low back pain that had worsened over the last month that was "moderate in severity," and Claimant's exhibiting of "tenderness, pain, and spasm" on exam. (Tr. 21). However, ALJ Maddox also mentioned Dr. Jennings' notation that Claimant's back pain would be "treated conservatively with muscle relaxant and analgesic medications." (*Id.*). Similarly, while noting a physical examination showing a limited range of motion in his lumbar spine due to pain and stiffness, ALJ Maddox also discussed the physician's exam findings that Claimant demonstrated "good sagittal and coronal balance, no excessive kyphosis or scoliosis, and negative straight leg raises bilaterally[,] as well as normal gait with no limp, full range of motion in all other joints, and neurological functioning within normal limits. (*Id.*). And finally, discussing Claimant's visit to the spine clinic in late December, ALJ Maddox noted Claimant's MRI showing "lumbar stenosis and

facet fluid, indicating some instability of the L4-5 spondylolisthesis" and observations of Claimant's "classic masked facies, cogwheel rigidity and a shuffling gait." (*Id.*). Contrasting with this evidence, ALJ Maddox also discussed how during the December exam, Claimant had "adequate sagittal and coronal balance and could squat and balance on his toes and heels" and how beyond a limited range of motion in the spine due to discomfort, "[t]he remainder of the exam was unremarkable, indicating negative straight leg raises and good range of motion of the hips, knees, and ankles." (*Id.*).

Claimant's characterization of the evidence, on the other hand, disregards the normal findings from his examinations and downplays his own representations during the administrative hearing and to physicians of having a very active lifestyle despite his symptoms during the relevant disability period.

Moreover, ALJ Maddox not explicitly discussing Dr. Dimar's reference to "fact that he has underlying Parkinson's disease and this is seriously affecting his activity [sic] to do most anything" does not change the outcome. First, this statement from Dr. Dimar was from a February 20, 2018 medical record, which postdates Claimant's date last insured by almost two months. Medical evidence from after a claimant's date last insured is only relevant to a disability determination when the evidence relates back to Claimant's limitations prior to the date last insured. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (medical evidence after date last insured was only minimally probative of claimant's condition before date last insured, so did not affect disability determination). Here, Dr. Dimar's records postdating Claimant's date last insured are minimally probative because these records reflect Claimant's conditions progressively worsening over time with relative stability during the three-month disability period at issue.

Second, it is well established that "an ALJ's failure to cite specific evidence does not mean that [he] failed to consider that evidence." *Kovach v. Comm'r of Soc. Sec. Admin.*, No. 1:25-cv-2506, 2026 WL 1656939, at *6 (N.D. Ohio June 9, 2026) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for [his] decision to stand.")). While ALJ Maddox did not explicitly discuss Dr. Dimar's February 20, 2018 statement regarding Claimant's underlying Parkinson's disease affecting his abilities, that does not mean he did not consider this record in his decision.

Claimant's reliance on other evidence that is minimally relevant to the disability period at issue is also not persuasive. Many of the statements Claimant made during his administrative hearing did not apply to the period from October to December 2017. To illustrate, Claimant testified that his walking became as bad as it was "today," aka the hearing date of May 3, 2024, "about four or five years ago." Going back four or five years from 2024 puts Claimant in 2019 or 2020, two to three years after the relevant disability period. Similarly, Claimant testified his speech has progressively worse over the last four years, meaning it was around 2020 when the worsening symptoms began. (Tr. 40-41). And Claimant's wife testified his "freezing instances" began occurring about a year ago, or in 2023, which was long after the relevant disability period in this case. Because these symptoms began years after the relevant disability period, they are minimally probative of Claimant's conditions before the date last insured. *See Higgs*, 880 F.2d at 863. Additionally, the fact that much of Claimant's testimony regarding the severity of his symptoms does not correlate with the period of disability for his claim supports ALJ Maddox's determination that Claimant's allegations were "not entirely consistent with a preponderance of the record evidence, which establishes that Claimant could perform a greater range of work-related tasks than alleged during the period relevant to this decision." (Tr. 21).

Essentially, Claimant is asking the Court to reweigh the small amount of evidence from the relevant disability period and find in the alternative. Such a request is impermissible. *See Talarico v. Comm'r of Soc. Sec.*, No. 3:24-cv-00475-MJD, 2026 WL 161406, at *5 (E.D. Tenn. Jan. 21, 2026) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)); *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013) ("Here, the [plaintiff] asks us to reweigh the evidence and substitute our judgment for that of the ALJ. We cannot do so. Even if we would have taken a different view of the evidence were we the triers of facts, we must affirm the ALJ's reasonable interpretation."). The Court, accordingly, finds no error in the ALJ's decision.

## IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

September 17, 2026

Copies: Counsel of Record